**O**

# United States District Court
# Central District of California

FRANCES MARQUEZ,

                Plaintiff,

     v.

CITY OF CYPRESS et al.,

                Defendants.

Case № 8:24-cv-01835-ODW (JDEx)

**ORDER GRANTING MOTION TO DISMISS [13]**

## I.    INTRODUCTION

Plaintiff Frances Marquez ("Marquez" or "Dr. Marquez") brings this action against Defendants City of Cypress ("City"), City Mayor Scott Minikus, City Councilmembers Bonnie Peat and Anne Mallari, and City Manager Peter Grant (collectively, "Defendants") for illegally retaliating against Marquez for exercising her First Amendment rights.  (Compl., ECF No. 1.)  Defendants move to dismiss the Complaint.  (Mot. Dismiss ("Mot." or "Motion"), ECF No. 13.)  The Court finds that Marquez fails to plead speech protected by the First Amendment and **GRANTS** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

All factual references derive from Marquez's Complaint, attached exhibits, and documents referenced and relied upon therein.  Well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### A.    Factual Background

On November 3, 2020, Marquez was elected to a seat on the Cypress City Council.  (Compl. ¶ 28.)

In July 2022, two Cypress citizens and the Southwest Voter Registration Education Project ("SVREP") filed a lawsuit in Orange County Superior Court against the City, *Southwest Voter Registration Education Project v. City of Cypress*, Case No. 30-2022-01270865-CU-CR-CJC (filed July 20, 2022) (the "SVREP Lawsuit"). (*Id.* ¶¶ 29–30.)  Prior to the SVREP Lawsuit, "the City's electoral system impaired the ability of minority voters to elect candidates of their choice and impaired their ability to influence the outcome of an election."  (*Id.* ¶ 29.)  The SVREP Lawsuit plaintiffs claimed that the City violated the California Voting Rights Act ("CVRA"); they "sought to force the City to convert to a by-district election system."[2]  (*Id.* ¶ 30.)

Marquez was the only member of the City Council who "supported district-based elections, believing among other things that litigating the case would not be cost-effective and [that by-district elections would] improve representation on the City Council."[3]  (*Id.* ¶ 31.)  Marquez's support for by-district elections and her opposition

---

[2] In the Complaint, Marquez uses the terms "by-district elections" and "district-based elections" interchangeably to refer to the same type of election reform.  (*See* Compl. ¶¶ 30–31.)

[3] The Complaint states that Marquez was the only member who supported by-district elections when she was first elected to the Council, but it is unclear from the briefing if the composition of the City Council later changed to include more by-district election supporters.  (*See* Compl. ¶ 31.)  For the purposes of this action, it is relevant that Marquez was at one point the only member of the City Council who supported by-district elections and the aims of the SVREP Lawsuit.  (*See id.* ¶¶ 56–57.)

to litigating the SVREP Lawsuit led Minikus, Peat, Mallari, and Grant to engage in "a campaign of harassment and retaliation" against her.[4]  (*Id.* ¶¶ 30–33.)

For instance, on or about January 26, 2022, Grant, the City Manager, issued an "admonition" to Marquez that directed her to conduct business "exclusively and directly through the City Manager."  (*Id.* ¶ 60.)  This admonition "improperly burden[ed] [Marquez's] speech" and interfered with her ability to do her job as a City Councilmember.  (*Id.* ¶ 61.)  Additionally, Grant subjected Marquez to "unreasonable and retaliatory demands" by "reprimand[ing] [Marquez] for asking basic questions necessary for her to do her job as an elected official."  (*Id.* ¶ 62.)

On or about June 27, 2022, the City passed Resolution Number 6899 ("Resolution 6899"), which censured Marquez for "repeatedly interfer[ing] with the City Manager's selection of a department director" by "insisting [o]n being included in the selection process" from November 2020 through the first quarter of 2021.  (*Id.* ¶¶ 34–36.)  Resolution 6899 also stated that Marquez had "directly engaged with a consultant regarding California Voting Rights Act/Election System community forum presentation."  (*Id.* ¶ 40.)  Marquez alleges that Resolution 6899 is evidence of Defendants' retaliation against her for "exercising her right to speak regarding important political issues . . . including district-based elections."  (*Id.* ¶¶ 40–41.)

On August 22, 2022, at a public meeting of the City Council, Councilmember Jon Peat[5] gave a presentation titled "Threats and Challenges to our City."  (*Id.* ¶ 43.)  The presentation criticized Marquez for attempting to "bring change" to the City of Cypress.  (*Id.* ¶ 44.)  Councilmembers discussed Mr. Peat's presentation for over 48 minutes, "using the City Council meeting as a forum to make bizarre and unwarranted personal attacks against Dr. Marquez."  (*Id.* ¶ 43.)

---

[4] Some of the instances of retaliation listed in the Complaint occurred before July 2022.  (*See* Compl. ¶¶ 34, 60.)  The Court infers from the briefing that Marquez may have publicly supported by-district elections prior to the initiation of the SVREP Lawsuit.  However, it is unclear from the Complaint when Marquez first expressed her support for by-district elections.

[5] Notably, Jon Peat is no longer on the City Council and is not a defendant in this action.  However, Mr. Peat's wife, City Councilwoman Bonnie Peat, is listed as a defendant.

Additionally, on September 16, 2022, the City Council passed Resolution Number 6905 ("Resolution 6905"), which Marquez describes as "a naked attack on [her] free speech rights." (*Id.* ¶ 46.) The City Council issued Resolution 6905 in response to Marquez's conduct on September 7, 2022 and September 8, 2022, during which Marquez and two other candidates for local public office spoke to students at Cypress High School about civic engagement. (*Id.* ¶¶ 47–48.) Resolution 6905 describes Marquez's presentation at the high school as "start[ing] out about politics and running for office, but quickly chang[ing] to how nobody gets along, how everybody is out to get her, how the City is being sued due to redistricting, and how the City Council is going against what the residents want." (*Id.* ¶ 49.) Resolution 6905 imposed the following disciplinary measures on Marquez for her presentation at Cypress High School:

- The City Council formally censured Dr. Marquez.
- The City Council directed Dr. Marquez "to issue a formal, written apology to Anaheim Union High School District and Cypress High School . . . ."
- The City Council revoked Dr. Marquez's appointment to the Orange County Council of Governments General Assembly (Alternate), the Southern California Association of Governments General Assembly (Alternate), and the City of Cypress Veteran Recognition Ad Hoc Subcommittee.
- The City Council imposed a $100 fine on Dr. Marquez.
- The City Council suspended Dr. Marquez's "City Council salary and stipend for 90 days effective October 1, 2022."

(*Id.* ¶ 50.)

Lastly, the City retaliated against Marquez by refusing to appropriately indemnify her during the SVREP Lawsuit litigation. (*Id.* ¶¶ 52–59.) At some point during the ongoing SVREP Lawsuit, the City's attorneys met with Marquez to prepare Marquez for her upcoming deposition with respect to that action. (*Id.* ¶¶ 53–54.) Over the course of that meeting, it "became clear that there was a conflict of interest which prevented the City's attorneys from representing Dr. Marquez." (*Id.* ¶ 54.) The

"conflict of interest" was that Marquez agreed with the SVREP Lawsuit plaintiffs that the City violated the CVRA and should switch to a by-district system.  (*Id.* ¶¶ 56–58.) Marquez's belief thus placed her at odds with the City and the majority of its Councilmembers.  (*Id.* ¶ 57.)  Based on her understanding that she could not be adequately represented by the City's lawyers, (*id.* ¶ 55 (citing California State Bar Rule of Professional Conduct 1.7)), Marquez retained alternate counsel, (*id.* ¶ 58). The City refused to reimburse Marquez for the $3,834 she incurred in legal fees in connection with the SVREP Lawsuit.  (*Id.* ¶ 59.)

**B.    Procedural History**

Based on the above facts, Marquez initiates this legal action against Defendants and seeks lost wages and benefits, damages, injunctive and declaratory relief, and attorneys' fees.  (*Id.*, Prayer.)  Marquez asserts four causes of action: (1) violation of her First Amendment rights pursuant to 42 U.S.C. § 1983, against all Defendants; (2) breach of contract for failure to pay wages and benefits under common law, against the City; (3) violation of the Cypress City Charter pursuant to California Code of Civil Procedure section 1060 and 28 U.S.C. § 2201, against the City; and (4) writ of mandate pursuant to California Code of Civil Procedure section 1085 and 28 U.S.C. § 1651, against the City and Grant.  (*Id.* ¶¶ 63–86.)

Defendants move to dismiss all causes of action under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim, or, alternatively, to strike various portions of the Complaint under Rule 12(f).  (Mot.)  The Motion is fully briefed.   (Opp'n, ECF No. 17; Reply, ECF No. 18.)   As the Court dismisses Marquez's claims based on Rule 12(b)(6), it declines to reach Defendants' motion in the alternative to strike under Rule 12(f).

## III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To

survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations or unreasonable inferences, nor will a court supply essential elements of a claim that are absent from the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.    DISCUSSION

Marquez argues that Defendants violated her First Amendment rights by retaliating against her for protected speech in several instances. First, Grant targeted her in a formal admonition and generally hindered her ability to perform her duties as an elected official. (Compl. ¶¶ 60–62.) Second, the City censured her through Resolution 6899 and Resolution 6905. (*Id.* ¶¶ 34–41, 46–51.). Third, the City Councilmembers used a City Council public meeting to give and discuss a

presentation regarding how Marquez posed a "threat" or "challenge" to the City.  (*Id.*
¶¶ 42–44.)  Fourth, the City refused to appropriately indemnify her and/or pay the
legal fees she incurred during the SVREP Lawsuit.  (*Id.* ¶¶ 52–59.)

The First Amendment states that "Congress shall make no law . . . abridging the
freedom of speech."  U.S. Const. amend. I.  "[T]he First Amendment prohibits
government officials from subjecting individuals to 'retaliatory actions' after the fact
for having engaged in protected speech."  *Houston Cmty. Coll. Sys. v. Wilson*,
595 U.S. 468, 474 (2022) (citation omitted).  When an elected official brings an action
for First Amendment retaliation, she bears the burden of proving that "(1) [s]he
engaged in constitutionally protected activity; (2) as a result, [s]he was subjected to
adverse action by the defendant . . . ; and (3) there was a substantial causal
relationship between the constitutionally protected activity and the adverse action."
*Boquist*, 32 F.4th at 775.  If the plaintiff official makes a prima facie showing, "the
burden shifts to the defendant official to demonstrate that even without the impetus to
retaliate he would have taken the action complained of."  *Id.* at 778.

The Court begins (and ends) its analysis by addressing the first prong of this
test: *Did Marquez engage in constitutionally protected speech?*  In the context of an
elected official, speech can be protected when the official expresses their views and
opinions.  *Id.* at 775.  However, not all expressive speech is protected.  Where an
elected official uses her "official powers" that implicate "governmental mechanics,"
the official "has no right to use [those powers] for expressive purposes."  *See Nev.
Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 131 (2011).  "Even if legislative voting
were expressive, and 'even if the actor would like it to *convey* his deeply held personal
belief' that fact 'does not transform action into First Amendment speech.'"  *Linthicum
v. Wagner*, 94 F.4th 887, 892 (9th Cir. 2024) (quoting *Carrigan*, 564 U.S. at 127).

Marquez argues that the retaliation against her stems from her support for
district-based elections.  (*See* Compl. ¶¶ 31, 41, 51.)  But the Complaint provides
minimal information about the speech that led to the alleged retaliation against her.

The Court first addresses Marquez's formal admonition from the City Manager. (*See id.* ¶¶ 60–62.)  This admonition, which was issued in January 2022, significantly pre-dated the SVREP litigation.  Marquez fails to adequately plead how this admonition connects to her support for by-district elections, if it connects at all.  The Complaint indicates that the admonition may have stemmed from Marquez "asking basic questions necessary to do her job" rather than a statement Marquez made relating to by-district elections or another topic that would raise freedom of speech concerns.  (*See id.* ¶ 62.)  Even if the admonition was a response to Marquez's protected speech, a mere admonition, without more, is unlikely to meet the bar for a "sufficiently material" adverse action to sustain a First Amendment retaliation claim. *See Boquist*, 32 F.4th at 784 (noting that legislatures "have historically exercised the power to . . . discipline" their members); *Wilson*, 595 U.S. at 477.  The Court therefore focuses its analysis on the remaining instances of alleged retaliation, which are more directly connected to the SVREP Lawsuit.

With respect to the remaining instances of alleged retaliation, Marquez has not provided any facts showing that she made a statement about by-district elections in some context other than in the course of her duties as a City Councilmember.  Rather, it appears that the other members of the City Council came to know of Marquez's support for by-district elections through Marquez's position and subsequent vote as to how the City Council should respond to the SVREP Lawsuit.  For example, Marquez alleges that she "was the only member [of City Counsel] who supported district-based elections."[6]  (Compl. ¶ 31.)  She opposed litigating the SVREP Lawsuit because she believed litigation "would not be cost-effective" and agreed with SVREP's position that a by-district election system would "improve representation on the City Council." (*Id.*)  Marquez's voting record and discussions with her fellow City Councilmembers

---

[6] Marquez also alleges that she voted "against transitioning to by-district elections."  (Compl. ¶ 56.) This appears to be a typographical error as the gravamen of the Complaint is that Marquez was retaliated against for her support of transitioning to by-district elections.  (*See id.* ¶¶ 9, 31–32, 57–58, 66.)

regarding how the City should respond to potential litigation are very much part and parcel of Marquez's position as an elected official. A discussion among members of a governing body leading up to a vote generally qualifies as advocating for that issue's passage or failure. Such a discussion is distinct from statements made to non-legislators or members of the press, which could be more fairly characterized as "inherently expressive acts." *See Carrigan*, 564 U.S. at 128. While Marques also alleges that she "repeatedly stated her belief that the City should transition to a by-district election system," there is little to no information about when or in what context Marquez made these statements. (Compl. ¶ 57.) Without more, Marquez falls short of establishing she engaged in protected speech.

In their Reply brief, Defendants argue that Marquez's presentation to Cypress High School students does not qualify for First Amendment protections due to the "time, place, and manner" of that speech. (Reply 3–4.) However, it is unclear to the Court if Marquez is arguing that her presentation qualifies for First Amendment protection. The Court understands Marquez's argument to be that Defendants retaliated against her for her support for election reform and her alignment with groups such as the SVREP. (*See* Compl. at 6 ("The Cypress City Council Majority Retaliates Against Dr. Marquez for Exercising Her Free Speech Rights Regarding By-District Elections"), ¶ 31 (alleging "because of [her support for by-district elections] Dr. Marquez was singled out by the other members of the City Council and subjected to unlawful treatment.").) Marquez presents Resolution 6905 as more evidence of unfair actions taken against her despite any wrongdoing. (*Id.* ¶ 49.) If Marquez is alleging her statements at the high school qualify as protected speech, she must make that argument explicitly.

In support of her First Amendment retaliation claim, Marquez relies heavily on *Boquist*. However, that case is distinguishable. In *Boquist*, Senator Boquist, a state legislator, made two statements that other senators considered threatening. 32 F.4th at 772–73. One statement was made on the senate floor but was not part of Boquist's

1   opposition to a bill; rather, Boquist told the Senate President "if you send the state
2   police to get me, Hell's coming to visit you personally." *Id.* at 772.   The other
3   statement was given to a reporter. *Id.*  Boquist told the reporter, "Well, I'm quotable,
4   so here's the quote. This is what I told the state police superintendent: Send bachelors
5   and come heavily armed. I'm not going to be a political prisoner in the state of
6   Oregon. It's just that simple." *Id.* (brackets omitted).  As a result of these statements,
7   the senate leadership required Boquist to give twelve hours advance notice whenever
8   he planned to enter the state capitol building, so that the senate could increase security.
9   *Id.* at 772–73.  The Ninth Circuit held that Boquist's complaint "raised a plausible
10  inference" that his statements were protected speech.  *Id.* at 780.

11          However, the situation presented in *Boquist* is distinct from situations where a
12  government official's speech is directly related to their use of legislative power.  *See*
13  *Carrigan*, 564 U.S. at 128.  As the Ninth Circuit explained in *Linthicum v. Wagner*:

> *Boquist* was a very different case.  Senator Boquist there was not
> exercising the "legislative power" as *Carrigan* conceived it; he was
> making statements, including to a reporter, not engaging in a
> "governmental act."  Indeed, *Carrigan* drew a distinction between the
> First Amendment's lack of protection for a legislator engaging in "a
> governmental act" or using "governmental mechanics" of the legislative
> process, and the personal rights of legislators to engage in speech.  As
> *Carrigan* noted, "[a] legislator voting on a bill is not fairly analogized to
> one simply discussing that bill or expressing an opinion for or against it.
> The former is performing a governmental act as a representative of his
> constituents; only the latter is exercising personal First Amendment
> rights."

23  94 F.4th at 894 (internal citations omitted).

24          Marquez's situation is more like those presented in *Carrigan* and *Linthicum*
25  than that in *Boquist*.  In *Carrigan*, the Supreme Court held that a Nevada state law
26  requiring a city council member to recuse himself from voting on a project proposal
27  was not unconstitutional because "government acts" are not entitled to First
28  Amendment protection.   564 U.S. at 127–28.   In defining what amounts to a

"government act," the Supreme Court included activity beyond legislative voting to encompass any activity which implicates "governmental mechanics" of the legislative process, meaning any official action in the legislature that tends to "the passage or defeat of a particular proposal." *Id.* at 125–27. Applying the *Carrigan* holding to the facts at issue in *Linthicum*, the Ninth Circuit held that state senators' walking out of legislative proceedings to prevent the senate from having enough persons present to reach a quorum amounted to a governmental act under *Carrigan* and therefore did not qualify as protected speech under the First Amendment. 94 F.4th at 893–95.

As pleaded, Marquez's Complaint does not allege that Marquez engaged in any activity that would fall outside the scope of the "government acts" envisioned under *Carrigan*. As the *Carrigan* majority puts it, while "an inherently expressive act remains so despite its having governmental effect, . . . it is altogether another thing to say that a governmental act becomes expressive simply because the governmental actor wishes it to be so. We have never said the latter is true." *Carrigan*, 564 U.S. at 128. Although the Court takes the pleadings in the light most favorable to Marquez, the Court cannot substitute missing elements of a claim. *See Boquist*, 32 F.4th at 774 (noting that the court will not "supply essential elements of a claim that are absent from the complaint"). Here, Marquez has not plausibly alleged or provided facts showing that her general support for by-district elections qualifies as protected speech. Accordingly, the Court finds that Marquez has failed to make a prima facie case for a First Amendment retaliation.

Therefore, the Court dismisses all causes of action as they relate to violations of the First Amendment. The remaining claims sound in common law and are before this Court under supplemental jurisdiction.[7] (*See* Compl. ¶ 20–21 (alleging federal jurisdiction pursuant to 42 U.S.C. § 1983 and supplemental jurisdiction over all other claims).) Therefore, in dismissing the constitutional claims, the Court also dismisses

---

[7] Although Marquez's third and fourth claims cite to the United States Code, these code sections concern the Court's ability to create remedies and issue writs. Neither code section supports an independent cause of action based in federal law. (*See* Compl. ¶¶ 76–86.)

the remaining claims for lack of jurisdiction.  As Marquez could plausibly amend her complaint to show her speech was constitutionally protected, the Court grants leave to amend.[8]

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion. (ECF No. 13.)  The action is dismissed without prejudice.  If Marquez chooses to amend, the First Amended Complaint is due no later than **twenty-one (21) days** from the date of this Order.  If Marquez does not timely amend, the dismissal of Marquez's causes of action as they relate to violations of the First Amendment shall be deemed a dismissal with prejudice.

**IT IS SO ORDERED.**

February 26, 2025

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

---

[8] Marquez could amend her complaint and re-file in this Court, or alternatively, Marquez could proceed with the state law claims in a state court.